J. S11006/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
MICHAEL FORD, : No. 2549 EDA 2014
:
Appellant :


Appeal from the PCRA Order, August 6, 2014,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0002360-2009


BEFORE:  FORD ELLIOTT, P.J.E., OTT AND MUSMANNO, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **Filed March 21, 2016**

Michael Ford appeals from the order of August 6, 2014, denying his first amended PCRA[1] petition.  We affirm.

The underlying facts of this matter are as follows:

> The complaining witness, Keliah Walker, testified that in the early morning hours of January 13, 2009, she had just gone to bed when she heard "a really loud noise."  She immediately went into the hallway, in response to her aunt's calls, only to learn it was the sound of a gun shot.  She returned to her bedroom and found a bullet hole in the window with a corresponding hole in the wall above her bed.  She then removed her two year old daughter (B.F.) from the bedroom and awakened Police Officer Tramaine Montague, who had also been asleep in bed with her and her daughter.  Ms. Walker's aunt notified the police, who arrived a short time later.  After giving a brief statement,

---
[1] Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

[Ms. Walker] was taken to police headquarters to give a more formal statement.

Ms. Walker testified that prior to this incident, she had had a three-year romantic relationship with [Ford], during which time they had a daughter, B.F. Although they did not live together during their relationship, [Ford] was very familiar with her bedroom and its layout. He would stay at her house one or two nights a week.

In May of 2008, Ms. Walker ended her relationship with [Ford]. Ms. Walker testified that [Ford] was initially cordial as he had hoped for reconciliation. In August of 2008, after discovering Ms. Walker's relationship with Officer Montague, [Ford] began harassing Ms. Walker and bombard[ing] her with threatening phone calls, as many as fifty in a day. This harassment included assaulting her in August of 2008 when she was picking her daughter up from the babysitter. Ms. Walker testified, "That night, he came up from behind me pulling my hair and trying to fight me." This assault was soon followed by [Ford's] threat to "finish what we started. So I guess you should be looking for me, whatever, whatever, but got to finish what we started." In addition, Ms. Walker interpreted [Ford's] recorded phone message of, "Matter of fact, I'll see you all when you get off work, whatever, you know what I mean, kill two birds with one stone, whatever. I see you all when you get off," as being directed to both herself and Officer Montague. Ms. Walker testified that on another occasion, [Ford] "told me he would wait for me outside my house. He said that if he could catch Tramaine, too, he could get him too. I told him, you can get in a lot of trouble threatening a cop, I said. He said I don't care if he's a cop. Cops can get touched too." On yet another occasion, [Ford] was heard to say in yet another phone message, referring to B.F., "She's going to be a single parent, single parent child mother fucking soon, and that's crazy. I didn't think it was going to be this soon. I

didn't think you were going to be out of the picture this early, but you're making it seem that way."

In her last conversation with [Ford], Ms. Walker testified that [he] told her that "he was calling for a reason. He wanted to make sure my daughter wasn't in my bedroom. He wanted to show me some fireworks up close and personal, and, he didn't want her to get hurt. I told him to elaborate on fireworks. He said I knew what he meant."

Officer Montague corroborated Ms. Walker's uncontroverted testimony that [Ford] called Ms. Walker "all the time." "Like every night he calls like a hundred times." He testified that on January 13, 2009, he answered the phone sometime between twelve and one o'clock in the morning. When [Ford] asked to speak to Ms. Walker, [the officer] told him everyone was asleep and hung up. Approximately an hour later, [the officer] was awakened by Ms. Walker telling him she thought [Ford] had "shot through the window." On inspecting the window he discovered a bullet hole and traced it up into the wall and eventually into the bathroom behind the wall.

Detective Frank Mullen testified that on January 13, 2009, he interviewed Ms. Walker at the Southwest Detective Division at approximately 3:45 a.m. to take her formal statement of the incident. Detective Mullen testified that Ms. Walker identified [Ford] as a possible perpetrator. He testified that during the course of his interview, Ms. Walker's cell phone rang numerous times and that on at least two occasions he listened along with Ms. Walker to the voice mail left by a person Ms. Walker identified as [Ford].

On at least one occasion during her interview with Detective Mullen, [Ford] called and asked Ms. Walker why she was overreacting, after all, she didn't get shot. In one of his voice messages, [Ford] stated "it's only one, and I'm going to make it a lot worse the next time." In another, referring to B.F.,

> [Ford] stated that "Next time might not go down like that, trying to keep her out of the line of fire or out the way, anything, you know what I mean." Ms. Walker testified that she had not mentioned the shooting incident to [Ford] at this time.

*Commonwealth v. Ford*, No. 2302 EDA 2010, unpublished memorandum at *1-3 (Pa.Super. filed 9/21/11), quoting trial court opinion, 11/30/10 at 4-7 (footnotes and citations omitted) (brackets in original). On January 21, 2009, appellant was arrested and later charged with discharge of a firearm into an occupied structure, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, possessing an instrument of crime, terroristic threats, three counts of reckless endangerment, aggravated assault, and simple assault.[2] Following a bench trial, appellant was found guilty of all charges except for aggravated and simple assault. *Id.* at *4. On March 3, 2010, the trial court imposed an aggregate sentence of 7 to 15 years' imprisonment. Post-sentence motions were denied by operation of law, and appellant filed a timely notice of appeal.

On appeal, appellant challenged the discretionary aspects of sentencing, alleging that the trial court failed to state adequate reasons on the record for the sentence imposed. After finding that appellant raised a substantial question for review, this court affirmed on the merits, holding

---

[2] *See* 18 Pa.C.S.A. §§ 2707.1, 6106, 6108, 907, 2706, 2705, 2702, & 2701, respectively.

that the trial court set forth specific and adequate reasons for the sentence imposed:

> In particular, the trial court explained that it found [appellant]'s conduct to be especially egregious relative to the offenses, noting that the way he acted in commission of the crimes "was just beyond rational or sane behavior." The court also expressed its concern that [appellant] represented a continued threat to the victims or others. In addition, the trial court explained its decision to sentence [appellant] to consecutive prison terms on all three reckless endangerment convictions, stating that his sentence for discharging a firearm into an occupied structure did not adequately account for the fact that his conduct had placed three individuals in danger of "catching a bullet."

*Ford*, at \*7, citing notes of testimony, 3/3/10 at 21-24. This court found no abuse of discretion in the judgment of sentence imposed.[3]

Appellant did not file a petition for allowance of appeal with the Pennsylvania Supreme Court; however, on June 6, 2012, he filed a *pro se* PCRA petition, alleging, *inter alia*, that appellate counsel was ineffective for failing to file an *allocatur* petition. Counsel was appointed and filed an amended petition on appellant's behalf, requesting that he be permitted to file a petition for allowance of appeal with the Pennsylvania Supreme Court *nunc pro tunc*. Appellant alleged that appellate counsel had failed to notify

---

[3] We also noted that despite appellant's representation to the contrary in his brief, none of the sentences imposed by the trial court exceeded the standard range of the sentencing guidelines. *Id.* at \*5 n.2.

him of this court's September 21, 2011 decision affirming the judgment of sentence. (Docket #13.)

Following hearings on July 22, 2014, and August 6, 2014, appellant's petition was denied. This timely appeal followed on September 5, 2014. On September 10, 2014, appellant was directed to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A. On October 1, 2014, appointed counsel filed a statement pursuant to Rule 1925(c)(4), stating his intention to file a petition to withdraw and **Anders** brief, after concluding that there were no non-frivolous issues to raise on appeal. (Docket #17.) The PCRA court filed an opinion on March 6, 2015, explaining its reasons for denying appellant PCRA relief.

On August 19, 2015, appointed counsel, J. Matthew Wolfe, Esq., filed an application to withdraw as counsel and accompanying "**Anders** brief." Appellant has not responded to the petition to withdraw as counsel.[4]

---

[4] Attorney Wolfe has filed an **Anders** brief rather than a **Turner**/**Finley** no-merit letter. **Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (**en banc**). On an appeal from the denial of a PCRA petition, a **Turner**/**Finley** letter is the appropriate filing. However, we may accept an **Anders** brief instead. **See Commonwealth v. Fusselman**, 866 A.2d 1109, 1111 n.3 (Pa.Super. 2004), **appeal denied**, 882 A.2d 477 (Pa. 2005) ("[B]ecause an **Anders** brief provides greater protection to the defendant, we may accept an **Anders** brief in lieu of a **Turner**/**Finley** letter."). **See also Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009) (guiding Pennsylvania courts' application of **Anders**). Despite counsel's error, we find that he has complied substantially with the **Turner**/**Finley** requirements. Hence, we overlook his procedural misstep.

> This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. **Commonwealth v. Halley**, 582 Pa. 164, 870 A.2d 795, 799 n. 2 (2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. **Commonwealth v. Carr**, 768 A.2d 1164, 1166 (Pa.Super. 2001).

**Commonwealth v. Turetsky**, 925 A.2d 876, 879 (Pa.Super. 2007), **appeal denied**, 940 A.2d 365 (Pa. 2007).

As stated above, the only issue raised on appeal was a challenge to the discretionary aspects of sentencing, and this court affirmed on the merits. Under 42 Pa.C.S.A. § 9781(f), the Pennsylvania Supreme Court does not review a defendant's appeal of the discretionary aspects of a sentence. Therefore, where a defendant's only allowance of appeal claim involves challenging the merits of an upheld-on-the-merits discretionary sentencing challenge to a guideline sentence, counsel cannot be held ineffective for failing to seek a discretionary appeal. Since the Pennsylvania Supreme Court is generally statutorily precluded from reviewing a

---

We also note that Attorney Wolfe did attach a copy of the letter to appellant advising him of counsel's intention to withdraw and of his rights going forward. **See Commonwealth v. Friend**, 896 A.2d 607, 615 (Pa.Super. 2006) ("PCRA counsel must contemporaneously forward to the petitioner a copy of the application to withdraw, which must include (i) a copy of both the 'no-merit' letter, and (ii) a statement advising the PCRA petitioner that, in the event the [] court grants the application of counsel to withdraw, the petitioner has the right to proceed **pro se**, or with the assistance of privately retained counsel") (footnote omitted).

defendant's discretionary sentencing claim, the claim for which appellant is seeking review is frivolous. ***Commonwealth v. Rigg***, 84 A.3d 1080, 1086-1090 (Pa.Super. 2014) (declining to extend the holding in ***Commonwealth v. Liebel***, 825 A.2d 630 (Pa. 2003) (appellate counsel is ***per se*** ineffective for failing to file a requested petition for allowance of appeal), to cases where the sole issue counsel could pursue is a discretionary sentencing claim).

For these reasons, the PCRA court did not err in denying appellant's request for reinstatement of his right to file a petition for allowance of appeal ***nunc pro tunc***. We determine that the issue raised in appellant's PCRA petition is wholly frivolous; and after our own independent review of the record in this case, we can discern no other issues of arguable merit. Therefore, we will grant Attorney Wolfe's petition to withdraw and affirm the order dismissing appellant's PCRA petition.

Order affirmed. Petition to withdraw granted.

Judgment Entered.

JosephD.Seletyn,Esq.
Prothonotary

Date: 3/21/2016

- 8 -